UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

J.N.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 1:25-cv-00640

Hon. Maarten Vermaat
U.S. Magistrate Judge

**OPINION**

This opinion addresses Plaintiff's appeal of Administrative Law Judge (ALJ) Tjapkes's decision denying Plaintiff's request for Disability Insurance Benefits (DIB) and Supplement Security Income (SSI).

The record before the Court demonstrates that Plaintiff suffers from a number of severe medically determinable impairments, including degenerative disc disease, spondyloarthritis, hypermobility syndrome, anxiety, depression, and cannabis use. Plaintiff asserts that the ALJ made several errors. Plaintiff's primary arguments are that the ALJ failed to evaluate Listing 14.09D, failed to properly evaluate medical and non-medical evidence, failed to properly evaluate opinion evidence, erred in formulating the claimant's residual functional capacity (RFC), and erred in relying on the vocational expert (VE) testimony. The Commissioner asserts that the ALJ did not err and that substantial evidence supports the ALJ's decision.

For the reasons stated below, the undersigned affirms the ALJ's decision.

## I. Procedural History

### A. Key Dates

The ALJ's decision notes that Plaintiff applied for DIB and SSI on November 2, 2022, alleging an onset date of September 14, 2022. ECF No. 5-2, PageID.48. Plaintiff's claim was initially denied by the Social Security Administration (SSA) on April 17, 2023. *Id.* The claim was denied on reconsideration on August 30, 2023. *Id.* Plaintiff then requested a hearing before an ALJ. ALJ Tjapkes conducted a hearing on Plaintiff's claim on February 5, 2024, and issued his decision on April 15, 2024. *Id.*, PageID.48-63.

### B. Summary of ALJ's Decision

The ALJ's decision correctly outlined the five-step sequential process for determining whether an individual is disabled. *Id.*, PageID.49-50. Before stating his findings at each step, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2027. *Id.*, PageID.51.

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity (SGA) since September 14, 2022. *Id.*

At Step Two, the ALJ found that the Plaintiff had the following severe impairments: cervical degenerative disc disease, spondyloarthritis, hypermobility syndrome, anxiety, depression, and cannabis use disorder. *Id.* The ALJ discussed a number of non-severe impairments, including spinal asymmetry, curvature, and degenerative changes, including thoracic spine pain, skin lesions, keloid removal, psoriasis, asthma, and history of nausea and vomiting. *Id.*

At Step Three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*, PageID.52. The ALJ specifically commented on the impairments listed in 1.15 (disorders of the spine), 14.09 (inflammatory arthritis), 12.04 and 12.06 (mental impairments) *Id.*, PageID.52-53.

The ALJ also discussed the Paragraph B criteria and determined that the criteria was not satisfied by finding moderate limitations in understanding, remembering or applying information; interacting with others; and concentrating, persisting or maintaining pace. *Id.*, PageID.53-54. The ALJ found mild limitations in adapting or managing oneself. *Id.*, PageID.53. As for Paragraph C criteria, the ALJ found that Plaintiff's mental disorder was not serious and persistent over a period of at least two years because Plaintiff retained the "minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life." *Id.*, PageID.54.

Before going on to Step Four, the ALJ found that the Plaintiff had the following RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). There can be frequent balancing and occasional crouching, crawling, kneeling, stooping, and climbing. There can be occasional exposure to occupational extremes of vibration and cold. There could be frequent but not constant reaching. The claimant would be able to understand, remember, and carry out simple instructions and tasks; could have occasional interaction with coworkers and supervisors but no interaction with the public; and no production rate work such as on an assembly line.

*Id*.

The ALJ devoted eight pages to discussing Plaintiff's RFC. This discussion included the following:

- a summary of the regulations regarding how the ALJ will address Plaintiff's symptoms, *id*., PageID.54-55,
- a summary of Plaintiff's statements, *id*., PageID.55,
- a summary of the medical records relating to degenerative disc disease, pain and stiffness, spondyloarthritis, hypermobility syndrome, anxiety, depression, and emotional and physical sensitivity, *id*., PageID.55-57,
- a summary of opinions by Dr. Blum, M.D.; Dr. Jackson, M.D.; Dr. Keller, D.O.; Dr. Hamby, D.O.; physical therapist Bennett; and mental health professionals Dr. Simone, Psy.D.; Dr. Rushlau, Ed.D.; Dr. Kitchen, Ph.D.; and Dr. Armstong, *id*., PageID.58-60,
- an explanation of how the ALJ arrived at his decision on the Plaintiff's RFC, *id*., PageID.60-61.

At Step Four, the ALJ concluded that Plaintiff was able to perform Past Relevant Work (PRW) as a cleaner but was unable to perform PRW as a retail clerk. *Id*., PageID.61. Alternatively, the ALJ found that Plaintiff was able to perform other jobs in the national economy.

At Step Five, the ALJ considered the Plaintiff's age, education, work experience and RFC and concluded that she could perform work such as a scrap sorter (200,000 jobs), inspector (200,000 jobs), and a folder (100,000 jobs). *Id*., PageID.62.

## II. Standard of Review

Review of an ALJ's decision is limited to two issues: (1) "whether the ALJ applied the correct legal standards," and (2) "whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); 42 U.S.C. § 405(g). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence. 42 U.S.C. § 405(g).

Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and whatever evidence in the record fairly detracts from its weight. *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984) (citations omitted). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords the administrative decision maker considerable latitude and acknowledges that a decision supported by

substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).

## III. Analysis

Plaintiff argues that the ALJ failed to consider Listing 14.09D in his analysis and that she meets Listing 14.09D. A claimant is per se disabled if his or her impairments meet or medically equal one of the specific requirements of a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. § 404.1520(a)(4)(iii). A claimant must satisfy all of the criteria to "meet" the listing. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). Ultimately, a claimant must show "that his impairments met or medically equaled in severity any listed impairment" or an ALJ could not have erred by failing to address a particular listing. *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014).

The ALJ considered Listing 14.09 generally, and specifically considered Listing 14.09C, which addresses spondylitis or other spondyloarthropathies. The ALJ stated:

> I have considered Listing 14.09 (pertaining to inflammatory arthritis), specifically considering Section 14.09C. Section 14.09C requires ankylosing spondylitis or other spondyloarthropathies with either ankylosis of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45 degrees or more of flexion from the vertical position; or ankylosis of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at thirty 30 but less than 45 degrees from the vertical position and involvement of two or more organs/body systems with one involved to at least a moderate level of severity. Although the claimant was diagnosed with spondyloarthritis, the record does not contain the requisite evidence on imaging (14F; 29F; 41F; 44F). Accordingly, I find that this impairment does not satisfy listing level severity under section 14.09.

*Id.*, PageID.52-53.

Listing 14.09D discusses inflammatory arthritis and states:

> D. Repeated manifestations of inflammatory arthritis, with **at least two** of the constitutional symptoms or signs (**severe fatigue, fever, malaise, or involuntary weight loss**) and **one of the following** at the ***marked*** level:
>
> 1. Limitation of activities of daily living.
>
> 2. Limitation in maintaining social functioning.
>
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt P, App. 1, Listing 14.09D (emphasis added).

Plaintiff points to medical records showing fatigue, malaise, and involuntary weight loss and argues that the ALJ should have specifically addressed Listing 14.09D. *See* ECF No. 8, PageID.1842-43 (citing multiple medical records). The Commissioner argues that Plaintiff's medical records do not establish that the ALJ should have specifically considered Listing 14.09D.

To show severe fatigue caused by inflammatory arthritis, a claimant must establish "a frequent sense of exhaustion that results in significantly reduced mental activity or mental function." 20 C.F.R. Pt. 404, Subpt P, App. 1, §14.00C2.

To show severe fatigue in her case, Plaintiff cites to multiple documents in the medical records. She first cites a letter written by her partner, Uriah Parson, which states that "she will mention that she is fatigued and in pain." ECF No. 8, PageID.1842 (citing ECF No. 5-7, PageID.383). Without an explanation, Plaintiff

cites to additional medical records relating to her fatigue. For example, in her brief at PageID.1842, she cites to records that document complaints she made:

- ECF No. 5-14, PageID.1079 (she feels weak and that "I feel fatigued with just sitting up all day");
- ECF No. 5-16, PageID.1447 ("[h]as increased fatigue");
- ECF No. 5-17, PageID.1486 ("she is very frequently fatigued and has low energy" with a diagnosis of anxiety and depression);
- ECF No. 5-18, PageID.1588 ("[f]eeling less fatigue overall (taking RA meds on schedule)");
- ECF No. 5-18, PageID.1616 ("recent infusion medication change - making her feel achy, tired, painful").

In the opinion of the undersigned, the cited records are not enough to show that she suffered from "severe fatigue."

Claimant also cites to medical records relating to malaise. Malaise requires the showing of "frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." 20 C.F.R. Pt. 404, Subpt P, App. 1, §14.00C2.

Again, without any explanation, in her brief at PageID.1843, Plaintiff cites to medical records to support a finding of malaise. For example:

- ECF No. 5-3, PageID.87-89, 93-96, 101, 103 (records in which she stated that she experiences pain, aches, and soreness in her spine, back, and

neck, that her knees were weak, and that she experienced stomach issues, anxiety, depression, and anger);

- ECF No. 5-7, PageID.374 (a letter from her sister describing symptoms observed); and
- ECF No. 5-15, PageID.1280 (a psychological evaluation for depression presenting with symptoms of "[c]hronic health issues that severely impact functioning").

In her brief at PageID.1843, Plaintiff cites to several physical rehabilitation notes including the following:

- ECF No. 5-12, PageID.847 (a November 28, 2022, progress note indicating that her activities of daily living were at fifty percent of her ability);
- ECF No. 5-13, PageID.1024( note indicating that on February 17, 2023, Plaintiff stated that she was feeling more sore throughout entire body today);
- *id.*, PageID.1026 (note indicating that on February 22, 2023, claimant reported abdominal discomfort;
- ECF No. 5-18, PageID.1609 (note indicating that on October 12, 2023, she reported right abdominal discomfort).

Claimant's progress note from January 10, 2024, states in part as follows:

**ASSESSMENT**
Julia has had a recent pain flare up that limits overall neuromuscular coordination, activity participation/tolerance, and contributes to pelvic floor dysfunction. She is limited with household ADLs including cooking, cleaning, and lifting household items. She reports increased abdominal tightness, cramping, and pain with penetration. Difficulty with adherence to HEP due to pain levels. Overall, Julia will continue to benefit from skilled PT to address functional deficits, improve independence with ADLs, and reduce pain as able. The patient's rehab potential is good. The patient's discharge prognosis is good.

ECF No. 5-18, PageID.1622.

Initially, as recognized by the ALJ, Plaintiff did suffer from severe impairments that caused some limitations in her abilities. However, the records cited by Plaintiff, which are mostly subjective statements or notes based upon subjective statements from Plaintiff, do not support a finding of malaise that could require the ALJ to address Listing 14.09D more specifically.

Plaintiff also asserts that the records support a finding of involuntary weight loss. Plaintiff's weight fluctuated between a low of 103 pounds in September of 2022 to 122 pounds in May of 2023. ECF No. 5-11, PageID.711-712; ECF No. 5-15, PageID.1102, 1110, 1115. On November 7, 2023, her weight was 117 pounds. ECF No. 5-16, PageID.1344. At the February 5, 2024 hearing, Plaintiff stated her weight was 115.9 pounds. ECF No. 5-3, PageID.94. To the extent that Plaintiff could show involuntary weight loss in her medical records, the records fail to support a conclusion that weight loss was due to inflammatory arthritis.

Moreover, even if Plaintiff could establish two of the above Listing 14.09D criteria, the records do not support finding a **marked** limitation in either activities of daily living, maintaining social functioning, or completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. *See* 20 C.F.R. Pt. 404, Subpt P, App. 1, Listing 14.09D. In addressing each of these issues, the ALJ did not find marked limitations. ECF No. 5-2, PageID.53, 56-57, 59-61. While the ALJ

found some limitations and accounted for those limitations in the RFC, the ALJ did not find marked limitations. Substantial evidence in the record supports the ALJ's findings. The record does not establish that the ALJ erred at Step Three by not specifically addressing Listing 14.09D.

Plaintiff argues that the ALJ failed to properly evaluate her symptoms and mistakenly determined that "improvement" equated to "full function." ECF No. 8, PageID.1844-1845. The ALJ considered Plaintiff's claims of disability, including her symptoms and subjective complaints and determined that the medical evidence in the record did not support the Plaintiff's claims of disability. ECF No. 5-2, PageID.55-61.

An ALJ considers objective medical evidence as:

> a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work. We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.

20 CFR § 404.1529(c)(2).

The Court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed[.]" *Kuhn v. Comm'r of Soc. Sec.*, 124 F. App'x 943, 945 (6th Cir. 2005). "It is for the administrative law judge, not the reviewing court, to judge the consistency of a

claimant's statements." *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 (6th Cir. 2020).

An ALJ evaluates a claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms of an alleged disability in accordance with SSR 16-3p. "While SSR 16-3p eliminated the use of the term 'credibility,' the regulatory analysis remains the same." *Karmol v. Comm'r of Soc. Sec.*, No. 1:17-cv-977, 2019 WL 1349485, at *3 (W.D. Mich. Mar. 26, 2019). An ALJ should consider the factors set forth in 20 C.F.R. § 404.1529(c)(3)[1] but "is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Comm'r of Soc. Sec.*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases). SSR 16-3p explains that an ALJ's decision must "contain specific reasons for the weight given to an individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so that the individual and any

---

[1] The SSA – and any ALJ who subsequently reviews the case – considers the following factors with respect to a claimant's symptoms:

(i) [The claimant's] daily activities;
(ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [the claimant's] pain or other symptoms;
(v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [the claimant's] pain or other symptoms;
(vi) Any measures [the claimant] use[s] or ha[s] used to relieve [the claimant's pain or other symptoms (e.g., lying flat on [their] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." 2017 WL 5180304, at *10.

Initially, it is important to recognize that the ALJ did not equate medical records showing improvement with a finding that Plaintiff could return to full function. The ALJ imposed significant restrictions in the RFC, finding Plaintiff could perform only light work with several limitations. That certainly is not a finding that Plaintiff could return to full function.

Secondly, it was not improper for the ALJ to consider Plaintiff's activities of daily living when evaluating Plaintiff's symptoms and in formulating the RFC. *Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1005-06 (6th Cir. 2025) (ALJ's reliance on sporadic activities are only problematic if the ALJ relies too heavily on those activities to determine that Plaintiff's mental impairments are not severe); 20 C.F.R. § 404.1529(c)(3). *See also Clark v. Comm'r of Soc. Sec.*, No. 1:23-CV-1024, 2024 WL 3721202, at *6 (W.D. Mich. Apr. 12, 2024), *report and recommendation adopted,* No. 1:23-CV-1024, 2024 WL 3311110 (W.D. Mich. July 5, 2024), *aff'd,* No. 24-1718, 2025 WL 1627408 (6th Cir. June 9, 2025) ("the ALJ did not equate plaintiff's daily activities to the ability to work full-time; rather, the ALJ appropriately cited . . . activities as some evidence that [plaintiff] was not as limited as . . . alleged"). Ultimatley, an ALJ's RFC determination must be supported by substantial evidence. *Torres v. Comm'r of Soc. Sec*, 490 F. App'x 748, 754 (6th Cir. 2012). If the record contains "conflicting evidence that would suggest further limitations, under the substantial evidence standard, administrative findings are not subject to reversal merely because

substantial evidence exists in the record to support a different conclusion." *Id.* The ALJ may consider *all* relevant evidence on record, including an individual's medical history, reports of daily activity, and recorded observations. SSR 96-8p.

In formulating RFC, Plaintiff argues that the ALJ improperly exercised his own medical judgment in evaluating Plaintiff's mental health impairments. The ALJ did not exercise his own medical judgment. Rather, the ALJ evaluated the medical evidence appropriately. The ALJ stated:

> In the fall of 2022, the claimant sought emergency care for anxiety (8F/9; 34F/17). She subsequently sought a therapy referral (34F/17). At that time, abnormal mood and affect were

> noted; however, findings were otherwise unremarkable (34F/18). Another brief mental status examination that same month noted normal mood and behavior (14F/8). She underwent a psychosocial evaluation, reporting worsening depressive symptoms at that time (34F/13). However, a mental status examination was within normal limits, with no ideations reported (34F/15). Nonetheless, she was diagnosed with major depressive disorder and generalized anxiety disorder, and outpatient therapy was recommended (34F/16). A history of cannabis use is also noted (46F/9, 38). She began therapy in October of that year, with mild improvement noted throughout the remainder of 2022 (34F/1-12).
>
> She reported noticing a change in her depression in early 2023; however, she continued to treat with therapy through the summer of 2023, with mild to moderate improvement noted (23F/11-25; 35F/1-6; 42F/24-45; 43F/8). In July of that year, the claimant underwent another evaluation, reporting anxiety, depression, emotional and physical sensitivity, frequent worries, intrusive thoughts, difficulty regulating emotions, stressors, panic attacks, impulsivity, self-harm, and isolation (42F/16-17, 19). She noted using marijuana, indicating she stopped use for this evaluation (42F/20). Abnormal mood and affect were noted, and she was diagnosed with generalized anxiety disorder and persistent depressive disorder (42F/20, 21). It was also noted that she could fall under the description of a highly sensitive person (42F/21). Recommendations included therapy (42F/21). However, she was noted to have normal thought content, thought process, and speech, and she reported living with others and socializing with some friends (42F/20). The following month, she participated in a consultative evaluation (28F). At that time, she reported anxiety, difficulty sleeping, and physical concerns (28F/1). She also reported low self-esteem and a history of suicidal thoughts, and noted she was attending counseling (28F/1, 3). The evaluation noted flat affect and she was diagnosed with major depressive disorder and unspecified anxiety disorder (28F/3, 5). However, otherwise unremarkable findings were noted, including normal mental activity, adequate insight, and intact memory, concentration, and judgment (28F/3, 4). The claimant reported no history of inpatient care, indicated receiving good grades in school with no grade retention or special education services, and she reported engaging in activities of daily living (28F/1-3). In September 2023, the claimant reported worsening anxiety, and her medication was increased (44F/5). However, mental status examination findings were within normal limits (44F/7). The following month, she reported help with medication despite side effects (44F/6). That same month, she noted therapy was helpful and had made her calmer (43F/8). She was trialed off of medication in November of that year (38F/6). She continued with therapy through the end of the year, with continued mild improvement generally noted (42F/1-15). The record contains no further mental health care since that time.
>
> The claimant is able to maintain her own personal care, prepare simple foods, do some chores, care for her pets, drive, spend time with others, and shop in stores (3E; 4E; 17E). Given the evidence of record, I have further limited her to understanding, remembering, and carrying out simple instructions and tasks; occasional interaction with coworkers and supervisors but no interaction with the public; and no production rate work such as on an assembly line, but finds no further limitations supported by the evidence of record.

ECF No. 5-2, PageID.56-57.

In evaluating the mental health records, the ALJ did not play doctor. "It is the ALJ, not a physician, who is charged with the responsibility of determining a claimant's RFC based on the evidence as a whole." *Clinton L. v. Comm'r of Soc. Sec.*,

No. 1:24-CV-654, 2025 WL 854331, at *5 (W.D. Mich. Mar. 19, 2025). "Moreover, an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). Here, the ALJ considered the medical records, addressed the medical findings, and set forth limitations in the RFC based upon those findings. The ALJ appropriately evaluated the medical records.

Plaintiff argues that the ALJ improperly evaluated the medical opinion evidence. The ALJ evaluated the medical opinions pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under that regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. §§ 404.1520c(a) and 416.920c(a). Instead, an ALJ will articulate his or her determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. §§ 404.1520c(b)(1) and 416.920c(b)(1). Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c)(1)–(5) and 416.920c(c)(1)–(5). In general, the ALJ must explain his or her consideration of the supportability and consistency factors but the ALJ is not required to explain how the remaining factors were considered. 20 C.F.R. §§ 404.1520c(b)(2) and (3) and 416.920c(b)(2) and (3). The regulations explain

"supportability" and "consistency" as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)–(2) and 416.920c(c)(1)–2.

Plaintiff argues that the ALJ failed to properly evaluate the supportability and consistency factors when considering the medical opinion evidence. Plaintiff says that the ALJ's conclusion that state agency consultant Dr. Blum's opinion was persuasive and the ALJ comparison of Dr. Blum's opinion with other providers including state agency medical consultant Dr. Jackson was improper. Plaintiff argues that the ALJ erred by finding her treating providers – Dr. Keller, physical therapist Bennett, and psychologist Dr. Armstong – partly persuasive or unpersuasive.

The ALJ addressed the state agency consultant opinion evidence as follows:

> I find the April 4, 2023 findings of Dale Blum, M.D. persuasive (1A; 3A). Dr. Blum, a reviewing state-agency medical consultant, found the claimant capable of light work with frequent balancing; occasional climbing, stooping, kneeling, crouching, and crawling; frequent bilateral reaching; and no concentrated exposure to extreme cold or vibration (1A/6-7; 3A/6-7). The consultant cited to treatment for spondylarthritis and joint hypermobility, reported good relief with medication, and no significant physical examination findings, as well as the claimant's reporting (1A/3-4, 8; 3A/3-4, 8). These findings are supported by the cited evidence. The complete evidence of record, including physical examination findings noting tenderness and swelling but noted improvement with physical therapy, is also consistent with such findings (8F; 10F; 14F; 17F; 29F; 41F; 45F; 46F). As such, these findings are persuasive.
>
> I find the August 11, 2023 findings of Larry Jackson, M.D. less persuasive (6A; 7A). Dr. Jackson, also a reviewing state-agency consultant, found the claimant capable of light work with frequent balancing and crawling; occasional climbing, stooping, kneeling, crouching, and crawling; and no concentrated exposure to extreme cold and vibration, citing to the same evidence of record (6A/3-4, 8-9; 7A/4-5, 9-10). This evidence is somewhat persuasive of these limitations. However, the consultant did not cite to any evidence to support the change in postural limitations or the removal of manipulative limitations. The complete evidence of record, including physical examination findings noting tenderness and swelling but noted improvement with physical therapy, is more consistent with a limitation to light work with frequent balancing; occasional climbing, stooping, kneeling, crouching, and crawling; frequent bilateral reaching; and no concentrated exposure to extreme cold or vibration (8F; 10F; 14F; 17F; 29F; 41F; 45F; 46F). As such, these findings are less persuasive.

ECF No. 5-2, PageID.58.

First, it was not improper for the ALJ to find Dr. Blum's opinion that Plaintiff was capable of light work persuasive. State agency medical doctors are considered "highly qualified and experts in Social Security Disability." 20 C.F.R. § 404.1513a. It is noted that Dr. Blum and Dr. Jackson's opinions were almost the same. Dr. Blum and Dr. Jackson found that Plaintiff was capable of light work with restrictions, but the ALJ found that Dr. Blum's opined restrictions were more persuasive based upon the totality of the evidence that supported slightly greater restrictions than recommended by Dr. Jackson. In other words, the ALJ adopted the opinion that was slightly *more favorable to Plaintiff* to the extent that Dr. Blum found Plaintiff capable of occasional crawling and Dr. Jackson found Plaintiff capable of frequent crawling. Second, the ALJ properly considered Dr. Blum and Dr. Jackson's opinions under the regulations. The ALJ found that consultative doctors supported their opinions by

citing to the medical evidence in the record consistent with their opinions. ECF No. 5-2, PageID.58 (citing, ECF No. 5-4, PageID.121-122, 124-126, 134-139, 162-163, 167-168; ECF No. 5-12, PageID.766-819, 833-853; ECF No. 5-13, PageID.878-986, 1016-1036; ECF No. 5-15, PageID.1224-1243; ECF No. 5-16, PageID.1435-1459; ECF No. 5-18, PageID.1588-1623; ECF No. 5-20, PageID.1649-1664). The ALJ appropriately considered the consultative medical opinions under the regulations and committed no error.

Plaintiff argues that the ALJ failed to properly consider the opinions of Dr. Keller, physical therapist Bennett, and psychologist Dr. Armstong. The ALJ found Dr. Keller's opinions not persuasive. As for Dr. Keller's medical opinion from his October 26, 2023, medical source statement, ECF No. 5-15, PageID.1261-1266, the ALJ explained:

> The record contains a medical source statement related to physical abilities completed by David Keller, D.O. in October 2023 (33F). Dr. Keller opined the claimant was capable of lifting/carrying up to 20 pounds occasionally, could sit for 1 hour at a time and total, could stand for 1 hour at a time and total, and could walk for 3 hours at a time and total (33F/1-2). Dr. Keller further opined the claimant could occasionally reach, push, and pull bilaterally; occasionally operate foot controls bilaterally; could frequently balance, occasionally climb and stoop, and never kneel, crouch, or crawl; could have no exposure to unprotected heights; could tolerate occasional exposure to moving mechanical parts, operating a motor vehicle, extreme cold, extreme heat, and vibration; and could tolerate frequent exposure to humidity/wetness and pulmonary irritants (33F/3-5). In addition, Dr. Keller opined the claimant could not walk a block at a reasonable pace on rough or uneven surfaces (33F/6). Dr. Keller cited to back pain related to rheumatologic diagnosis, and mild intermittent asthma Dr. Keller further noted that the claimant's ability to interact with others and be around food was affected by anxiety and nausea (33F/6). (33F). However, Dr. Keller cites to no objective findings, such as mental or physical examination findings, test results, or imaging. The complete evidence of record is not consistent with such significant limitations. Instead, evidence of record including diagnoses, treatment, imaging, physical examination findings, and physical therapy notes, is more consistent with limitation to light work with frequent balancing; occasional climbing, stooping, kneeling, crouching, and crawling; frequent bilateral reaching; and no concentrated exposure to extreme
>
> cold or vibration (8F; 10F; 14F; 17F; 29F; 41F; 45F; 46F). As such, these findings overall are unpersuasive.

ECF No. 5-2, PageID.58-59.

The ALJ determined that the restrictions Dr. Keller set forth in his medical source statement were not supported or consistent with the medical evidence. The ALJ correctly found that Dr. Keller included no objective medical findings to support the boxes that he checked in his medical source statement.

Further, the ALJ explained why he determined that physical therapist Bennett's opinion, contained in a letter, ECF No. 5-7, PageID.387, was unpersuasive:

> In addition, the record contains correspondence from Anna Bennett, PT, DPT, LSVT, the claimant's physical therapist (18E). Ms. Bennett opined that the claimant was limited in her tolerance to standing less than 60 minutes, repetitive bending, squatting, and lifting activities under 10 pounds (18E/1). However, Ms. Bennett only vaguely referenced pain and strength limitations without noting specific findings (18E/1). As noted, the complete evidence of record, including physical therapy findings, is more consistent with limitation to light work with frequent balancing; occasional climbing, stooping, kneeling, crouching, and crawling; frequent bilateral reaching; and no concentrated exposure to extreme cold or vibration (8F; 10F; 14F; 17F; 29F; 41F; 45F; 46F). As such, these findings are generally unpersuasive.

*Id.*, PageID.59. The ALJ explained that the letter opinion was unsupported with "specific findings" and inconsistent with the overall medical record.

The ALJ explained why he found the medical statements containing Dr. Keller's October 26, 2023, mental opinion. ECF No. 5-15, PageID.1257-1259, not persuasive, and Dr. Armstrong's December 13, 2023, mental opinion, ECF No. 5-15, PageID.1309-1311, partially persuasive.

As for Dr. Keller's mental ability opinion, the ALJ explained:

> The record contains a medical source statement related to mental abilities completed by Dr. Keller (32F). There, Dr. Keller opined that the claimant had marked or extreme limitations in understanding, remembering, or carrying out complex instructions or making simple or complex work-related decisions, as well as marked limitation in responding appropriately to usual work situations or changes in routine work settings (32F/1-2). Dr. Keller also noted difficulty in concentrating, pace, and task completion (32F/2). However, no specific limitations in this area were noted. Further, Dr. Keller did not cite to any specific mental status examinations, therapy records, or other objective findings but did cite to generalized anxiety disorder and marijuana use (32F/2). The complete evidence of record is more consistent with an overall limitation to understanding, remembering, and carrying out simple instructions and tasks; occasional interaction with coworkers and supervisors but no interaction with the public; and no production rate work such as on an assembly line (Hearing Testimony; 3E; 8F; 14F; 23F; 28F; 34F; 35F; 42F-44F). As such, this opinion is not persuasive.

*Id.*, PageID.60.

Again, the ALJ found that Dr. Keller did not include objective medical findings to support the boxes that he checked in his mental source statement. Further, the ALJ determined that the restrictions Dr. Keller set forth in his mental source statement were not supported or consistent with the medical evidence.

As for Dr. Armstrong, the ALJ found:

> The record also contains a medical source statement completed by Andrea Armstrong, a clinical psychologist (36F). Dr. Armstrong opined that the claimant had primarily mild to moderate limitation in understanding, remembering, and carrying out instructions with a marked limitation in understanding and remembering complex instructions; moderate limitation in interacting with the public and supervisors but marked limitation in interacting with coworkers, and mild limitation in responding to usual work situations or changes in routine work settings (36F/1-2). Dr. Armstrong further indicated that the claimant's ability to focus and concentrate on assigned tasks was significantly impaired (36F/2). She cited to the claimant's anxiety and depression impacting attention, focus, and short-term detail as well as her ability to interact with others, and focus and concentration impaired by anxiety and physical pain, with no reference to any substance use (36F/1-2). I find these limitations partly supported by the cited evidence of record. However, the limitations in interacting with others appears internally inconsistent with no specific evidence consistent with a greater limitation in interacting with coworkers versus the public. Further, Dr. Armstrong does not cite to the claimant's reported marijuana use, which continued until at least July 2023 (43F). The complete evidence of record, including noted improvement during therapy, is more consistent with a limitation understanding, remembering, and carrying out simple instructions and tasks; occasional interaction with coworkers and supervisors but no interaction with the public; and no production rate work such as on an assembly line (Hearing Testimony; 3E; 8F; 14F; 23F; 28F; 34F; 35F; 42F-44F). As such, this opinion is only partly persuasive.

*Id.*

Overall, the ALJ found Dr. Armstrong's opinion partially persuasive with the opined limitations partly supported in the record, but inconsistent with the medical record regarding limitations in interacting with others. Plaintiff asserts that the ALJ improperly indicated that Dr. Armstrong failed to take into account Plaintiff's marijuana use, but the ALJ made that statement because Dr. Armstrong stated that: "anxiety and depression, which are exacerbated by her physical pain and limitations directly impair her attention to detail, short-term memory, and focus as observed from therapy sessions and her self-report." ECF No. 5-15, PageID.1309. In addition to finding this inconsistent and unsupported by the medical record, the ALJ questioned why Dr. Armstrong failed to mention Plaintiff's marijuana use as a potential factor in her attention to detail, memory, and focus impairments.

Plaintiff argues essentially that the ALJ should have determined the persuasiveness and evaluated the opinion evidence differently. But that is not grounds for relief. *Brown v. Comm'r of Soc. Sec.*, No. 1:23-CV-122, 2024 WL 1259726, at *5 (W.D. Mich. Feb. 7, 2024), *report and recommendation adopted*, No. 1:23-CV-122, 2024 WL 1251232 (W.D. Mich. Mar. 25, 2024), and *report and recommendation adopted*, No. 1:23-CV-122, 2024 WL 1258380 (W.D. Mich. Mar. 25, 2024). The ALJ is tasked with formulating a claimant's RFC and should consider all the evidence in the record to make that determination. Ultimately, it the responsibility of the ALJ to build an "accurate and logical bridge" from the evidence to the conclusions. *Lamere v. Comm'r of Soc. Sec.*, No. 2:17-CV-93, 2018 WL 4501201, at *4 (W.D. Mich. Sept. 20, 2018). The ALJ's RFC decision must allow the

Court to trace the path of the ALJ's reasoning. S*kinner v. Comm'r of Soc. Sec.*, No. 2:23-CV-155, 2024 WL 3970267, at *1 (W.D. Mich. Aug. 28, 2024). Here, the ALJ did exactly that in considering the opinion evidence, and the medical and non-medical evidence in formulating the RFC.

Plaintiff argues that the vocational evidence was insufficient to support the ALJ's Step Four and Five determinations. The ALJ found that Plaintiff could perform her past relevant work as a cleaner, DOT #323.687-014, SVP 2 unskilled, which is classified and performed as light. ECF No. 5-2, PageID.61. Plaintiff argues that this was error because DOT #323.687-014 corresponds to "cleaner, housekeeping", which involves things like making beds, folding linens, and replenishing drinking and writing supplies. ECF No. 8, PageID.1854. Plaintiff argues that this was not the type of past work that she performed. *Id.*, PageID.1855. She argues that she performed work that more closely resembles "cleaner, commercial or institutional" DOT 381-687.014, which involves frequent stooping, kneeling, crouching, and reaching which is outside her RFC. *Id.*

First, the VE testified that Plaintiff's past work as a janitorial cleaner was classified and performed at a light level. ECF No. 5-3, PageID.109. The VE testified that an individual who could frequently balance, have occasional exposure to occupational extremes of vibration and cold, frequent but not constant reaching, and understand, remember and carry out simple instructions and tasks, with occasional interaction with coworkers, supervisors and public could perform the cleaner position as classified and performed. *Id.* Counsel for Plaintiff made no

objection to this testimony at the hearing. At Step Four, the ALJ found that Plaintiff could perform past work as a janitorial cleaner. "The Sixth Circuit, along with other courts across the country, have generally recognized that a claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court." *Alderton v. Comm'r of Soc. Sec.*, No. 1:14-CV-1054, 2016 WL 1042320, at *4 (W.D. Mich. Mar. 16, 2016) (citation omitted). It was not error for the ALJ to rely on the VE's testimony.

At Step Five, the burden shifts to the Commissioner to show "a significant number of jobs in the economy that accommodate the claimant's [RFC] (determined at Step Four) and vocational profile." *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (internal quotation marks omitted). The Sixth Circuit has affirmed that an ALJ may satisfy his or her step-five burden through VE testimony and/or reliable sources such as the DOT. *See Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 562–63 (6th Cir. 2022), *cert. denied sub nom. Moats v. Kijakazi*, 143 S. Ct. 785 (2023) (holding that the VE's testimony amounted to substantial evidence because the VE was a "well-credentialed" expert, and the VE's testimony that the Plaintiff could perform a number of available jobs was consistent with the DOT); *O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 318 (6th Cir. 2020) ("Because the DOT continues to be recognized as a source of reliable job information and O'Neal did not cross-examine the vocational expert when he had the opportunity, the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that

O'Neal was able to perform work that existed in significant numbers in the national economy."); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010) (an ALJ may rely on evidence such as testimony of a VE and the DOT); *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606–07 (6th Cir. 2009) (holding that the ALJ's reliance on the VE's "uncontradicted, credible testimony" was substantial evidence supporting the ALJ's conclusion that the plaintiff was not disabled).

When an ALJ relies on VE testimony, the ALJ must either ensure that it does not conflict with the DOT or obtain a reasonable explanation for any such conflict. SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000); *Lindsley*, 560 F.3d at 603. Once the VE confirms that his or her testimony does not conflict with the DOT, the ALJ is under no obligation to question the VE further to determine that the testimony was correct. *Id.* at 606 (citing *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006) ("Nothing in S.S.R. 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.")).

Plaintiff argues that the VE erred by combining several different jobs into the scrap sorter position, and the inspector position and further argues that the VE testimony regarding the number of jobs is different than what Plaintiff believes exists based upon her research from other sources. The ALJ, based upon the VE's testimony, found that Plaintiff cold perform jobs such as scrap sorter (200,000 jobs), inspector (200,000 jobs), and folder (100,000 jobs). The VE explained that her testimony was based upon the DOT and her professional experience, labor marker

knowledge and what is needed to perform work. ECF No. 5-3, PageID.114. In making the finding that Plaintiff could perform work that exists in the national economy, the ALJ further explained:

> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. The vocational expert
>
> indicated that the DOT does not discuss things like competitive pace, definitions of some of the jobs provided, issues of time off-task, interaction with others, production line work or vibrations, and that her testimony regarding these matters is based upon professional experience and knowledge (Hearing Testimony).

ECF No. 5-2, PageID.62-63.

It was not error for the ALJ to rely on the VE testimony to find that substantial evidence exists that Plaintiff could perform significant jobs in the national economy.

## IV. Conclusion

Accordingly, the Court affirms the decision of the Commissioner because substantial evidence exists to support the ALJ's decision, and the ALJ appropriately applied the law and regulations.

Dated: September 4, 2026

/s/ Maarten Vermaat
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE